FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
APR 2 1 2025
KEVIN P WEIMER, Clerk
By: Matthew H Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **HAROLD HARRIS,**<br>Plaintiff,<br>v.<br>**T'ZIAH THOMAS,**<br>**BULLARD LOGISTICS, LLC, and**<br>**AMAZON LOGISTICS, INC.,**<br>Defendants. | CIVIL ACTION<br>FILE NO: 1:25-cv-00095-VMC<br>**Hon. Judge Victoria M. Calvert** |

**PLAINTIFF'S PARTIAL MOTION FOR DEFAULT JUDGMENT DUE TO SPOLIATION OF EVIDENCE AND DISCOVERY VIOLATIONS UNDER RULE 37(b) AND 37(e)**

**TO THE HONORABLE COURT:**

COMES NOW, Plaintiff Harold Harris, appearing pro se, and pursuant to Federal Rules of Civil Procedure 37(b), 37(e), and the Court's inherent authority respectfully moves this Honorable Court for an order granting plaintiff's motion for partial default judgment, and incorporated support brief for claims 1-10, 12 and 19, for requested relief against Defendant T'Ziah Thomas ("Thomas"), Defendant Bullard Logistics, LLC ("Bullard"), Defendant Amazon Logistics, Inc. ("Amazon") and (collectively, "Defendants") showing as follows:

## I. INTRODUCTION

This case arises from a motor vehicle collision involving Thomas, a delivery associate ("DA") employed by Bullard, a Delivery Service Provider ("DSP") contracted by Amazon. On October 8, 2022, Thomas was delivering Amazon parcels to customers in a Sandy Springs neighborhood along Jett Ferry Road. While traveling south on Jett Ferry Road, Thomas pulled his vehicle to the right side of the road, stopping just north of the intersection of Jett Ferry Road and Jett Ferry Manor.

Moments later, Plaintiff, who was also traveling south on Jett Ferry Road, approached Thomas's vehicle from the rear. Thomas's vehicle, positioned as if parked, showing no signs of movement or indication of an impending left turn was directly impeding Plaintiffs path. Plaintiff attempted to drive around the delivery vehicle, and had almost fully passed Thomas's vehicle, before Thomas abruptly and without signaling initiated a hard left turn, colliding with the rear wheel of Plaintiff's vehicle (which measures 18.6 feet long), injuring Plaintiff and his passenger in the process. Thomas then proceeded to flee from the scene of the accident down a dead-end street. At this point, the incident appeared to be a straightforward automobile accident with injuries, with a potential claim of negligence.

On December 09, 2024, Plaintiff filed a fourth amended complaint after uncovering additional misconduct of Defendants and their employees/agents. Actions taken by all Defendants and their employees/agents following the collision, including tampering with evidence, obstruction of justice, spoliation of key evidence, willful fraud, and engaging in a coordinated effort to shift the blame to cover up Thomas' liability. Transforming this case into one that is much more serious in nature, involving systemic misconduct and fraudulent activities, including the following:

1. Failure to preserve crucial dashcam footage and comprehensive telematic data from the Netradyne Inc.'s "Driver i" system installed in Defendant Thomas's delivery vehicle;

2. Fraudulent alteration and fabrication of dashcam video evidence, which was subsequently presented to the investigating officer at the scene and entered into discovery;

3. Failure to preserve Event Data Recorder (EDR) "black box" data from the Amazon branded delivery vehicle;

4. Failure to produce electronically stored information (ESI) to include the original dash cam video with comprehensive data, Netradyne systems A.I. determined causality of the incident, Event Data Recorder, GPS data and driver monitoring records;

5. Failure to comply with a court order requiring production of discovery materials, specifically data and documents from the Event Data Recorder (EDR); and

6. Wire fraud and insurance fraud through electronic transmission of fraudulent video evidence to insurers, counsel, the arbitration board, and in discovery responses.

As will be demonstrated below, Defendants' actions constitute willful spoliation of evidence that has substantially prejudiced Plaintiff's ability to litigate his claims, warranting the severe sanctions requested herein.

## II. STATEMENT OF FACTS

### *A.* ***<u>The Collision</u>***

On October 8, 2022, at approximately 5:25 PM, Plaintiff was driving south on Jett Ferry Road in Sandy Springs, Georgia, with passenger Tyrone Hill, whom Plaintiff had just picked up from his residence located at 8360 Jett Ferry Road. As Plaintiff approached the intersection of Jett Ferry Road and Jett Ferry Manor, he observed Thomas's Amazon delivery vehicle stopped on the right side of the road in what appeared to be a parked position.

Jett Ferry Road at the location of the accident is approximately 26 feet wide with no visible yellow dividing line. Defendant Thomas's delivery vehicle (a 2020 Ford Transit) measured 8.1 feet wide with mirrors, occupying roughly one-third of the available road surface while in its stopped position. As Plaintiff attempted to pass the stationary vehicle, Defendant Thomas suddenly initiated a left turn without signaling, striking Plaintiff's vehicle on the right rear wheel area.

The impact caused the back of Plaintiff's vehicle to slide to the left, striking the cement curb and resulting in the rear axle detaching from the vehicle's frame. The points of impact on both vehicles indicate that approximately 99% of Plaintiff's vehicle had already cleared Thomas's seated position

when the collision occurred, demonstrating that Plaintiff had nearly completed his passing maneuver when Thomas initiated his left turn.

After the collision, Thomas left the scene, driving first east on Jett Ferry Manor (into a dead end), and then north on Jett Ferry Road before stopping at the dead end (Cul-de sac) on Jett Ferry Road. Shortly thereafter, Marrotney Green and Majid Amin, both employees of Bullard Logistics, arrived at the scene and drove past Plaintiff's vehicle disabled in the middle of Jett Ferry Road, and proceeded north to Thomas' location. Sandy Spring's Fire Department and medical were the initial first responders on the scene. Then the Sandy Springs Police Department responded to the accident, with Officer J.P. Smith arriving at approximately 5:39 PM.

### *B.* ***Evidence Tampering and Obstruction of Justice at the Scene***

The dashcam system installed in Thomas's vehicle recorded the entire incident, but instead of playing the full video for the investigating officer, Bullard's fleet manager Marrotney Green recorded a five (5) second video clip by using the Netradyne playback feature accessed via Thomas' work cell phone. And while the full video played on the phone, Marrotney Green recorded only five seconds of Thomas' cell phone screen showing only one (1) of the four (4) camera views.

Officer Smith's bodycam footage reveals a coordinated effort by Thomas, Green, and Amin to manipulate evidence and influence the officer's assessment of liability, as are the instances mentioned herein.

When Officer Smith initially questioned Thomas, Thomas was unable to clearly articulate what happened. Officer Smith initially indicated to Thomas that he believed Thomas was at fault. (***Officer Smith's bodycam timestamp: 17:42:52***)

Marrotney Green interjected himself into the conversation between Officer Smith and Thomas, stating that he could "pull the video from the cameras" to show what happened. (***Id. timestamp: 17:44:50***)

Green later approached Officer Smith with his personal cell phone, showing him an altered 5-second video clip that he claimed to have pulled from the dashcam system. (***Id. timestamp: 17:49:37***)

After viewing this altered video clip, Officer Smith's assessment of the incident changed. While initially indicating he would issue Thomas a citation for an improper left turn, he ultimately decided not to issue a citation because he couldn't determine fault. (***Id. timestamp: 18:11:27 - 18:12:55***)

When questioned by Plaintiff about what the video showed, Officer Smith replied, "it showed that he (Thomas) stopped momentarily and then was making a left turn." (***Id. timestamp: 18:13:14 - 18:15:36***)

## *C.* ***<u>Destruction of Crucial Evidence</u>***

The Netradyne "Driver i" system installed in Thomas's vehicle captured the incident from multiple camera angles. This system automatically identifies "critical events" such as accidents, and other traffic violations, it determines causation and then uploads this comprehensive data to a secure cloud server, https://www.netradyne.com/features/video-access, "Manage theft & insurance claims, Searchable, real-time video captures and analyzes 100% of driving time so you have solid, high-quality video evidence to quickly exonerate drivers, prove service, and resolve insurance claims." And the dash cam videos, and comprehensive data will be retained here for the express purpose of any potential insurance claims and or litigation that may arise from the accident, as well as driver coaching. (***See Exhibit B-1***) Despite this automated preservation feature, Amazon claims the data was automatically deleted approximately 80 hours after the accident.

> **Ms. Bankston: "I believe that Mr. Sippel said 48 hours. My understanding is it is more like 80 hours which is like three and a half days unless Amazon is notified so that we can put this third-party company Netradyne -- that we can actually save the video." (See Exhibit F-1 Pg. 38 Lines 5-9)**

Jermaine Bullard viewed the full version of the dash cam video (***See Exhibits A-1 Interrogatory 18, and A-2 Interrogatory 12, "Jermaine Bullard reviewed the video of the accident and found that***

***Defendant Thomas turned his left turn signal on indicating that he was intending to make a left hand turn, when the Plaintiff tried to pass Defendant Thomas on the driver side on a road with double yellow lines"***), but failed to preserve the full video and data, even though he was fully aware that the investigating officer was not able to place liability on either party.

***SUPPLEMENT GEORGIA MOTOR VEHICLE CRASH REPORT***
***NARRATIVE CONTINUED***

> ***"The investigating officer was unable to discern the at fault driver. Both drivers gave plausible accounts of the accident." (See Exhibit E-1 Police Incident Report pg. 3)***

And Jermaine Bullard knew that he was going to file an insurance claim for the repairs needed to put the delivery vehicle back in operation (***See Exhibit C-4***).

Amazon and Bullard allowed Netradyne, a third-party company, to destroy the dash cam video and accompanying comprehensive data, which was critical evidence needed for Plaintiff to litigate his claims. Neither Amazon nor Bullard tried to preserve this evidence prior to its destruction. This critical evidence cannot be reproduced or replaced.

On January 23, 2023, Bullard sent the damaged delivery vehicle for repairs without first preserving data from the vehicle's Event Data Recorder (EDR), which would have contained crucial information about the vehicle's speed, braking, turn signals, and other operational details at the time of the collision.

Amazon failed to preserve the GPS data from their in-house system(s), that would have shown the exact location, speed, and movements of the delivery vehicle before, during, and after the collision. This critical evidence cannot be reproduced or replaced.

### *D. Manufacturing of Fraudulent Evidence*

Green created an altered 5 second video clip at the scene by recording just one camera view from the dashcam video while displayed on Thomas's work phone. This heavily altered clip was shown to the investigating officer to influence his assessment of liability, (***See Exhibit B-2 Officer Smith's bodycam timestamp: 17:49:47 – 17:50:34***) and it worked! (***Id, timestamp: 17:53:14 – 17:54:12, "They have to have some compassion for Amazon, they're out there trying to maneuver this thing, if they could be a little more patient and wait for him to maneuver..."***)

On October 14, 2022, six days after the accident, a second fraudulent video clip was manufactured at the Amazon facility, attempting to use the same process—by playing the securely stored dashcam video on Thomas's work phone and recording the screen with a second device. However, critical mistakes were made in this attempt to remake the recording originally created by Marrotney Green at the scene of the accident. This second, 5 second video clip was subsequently distributed electronically, to Amazon, Amazon's attorney's, Bullard's attorneys, Bullard's insurer (American Automobile Insurance Company), the insurance arbitration board, and eventually to Plaintiff through discovery.

On October 22, 2024, Plaintiff retained the services of The National Center for Audio & Video Forensics ("NCAVF") to analyze the origin metadata of the video clip provided in discovery. And through forensic methods it was determined this video clip was actually created at 5:39:10 PM, on October 14, 2022, with the GPS coordinates placing the origin location at 6945 Button Gwinnett Drive, Doraville Georgia 30340. Which is the same Amazon facility that Bullard works out of. And not at the scene of the accident on October 08, 2022, as claimed. Although Amazon claimed that all of the original dash cam video and comprehensive data had been automatically deleted after 80 hours. Someone was able to use Thomas' work cell phone to access the video through the Netradyne app to create this second fraudulent video clip six (6) days after the accident, from a location other than the scene of the accident. (***See Exhibit E-2 Pg. 3, line 16–19***)

### E. ***Discovery Violations and Non-Compliance with Court Orders***

Defendants have consistently obstructed Plaintiff's legitimate discovery efforts:

1. On May 10, 2023, Plaintiff filed initial discovery requests seeking interrogatory responses and document production from all Defendants.

2. Due to inadequate responses, Plaintiff issued a Rule 6.4(b) letter on October 3, 2023, requesting supplementation, which Defendants ignored.

3. On January 19, 2024, a telephonic hearing was held regarding Defendants' discovery deficiencies, but Defendants continued to withhold relevant information and documents.

4. On April 22, 2024, Judge Tailor (State Court of Fulton County State of Georgia) held a hearing on Plaintiff's motion to compel. During this hearing, both Defendants admitted that the full dashcam video had been destroyed—Bullard's counsel suggested it was destroyed after 48 hours, while Amazon's counsel stated it was destroyed after approximately 80 hours.

5. On April 25, 2024, Judge Tailor issued an order compelling Defendants to produce specific documents including data from the delivery vehicles' onboard Event Data Recorder (EDR) and answer previously unanswered questions. (See Exhibit A-3)

6. On May 6, 2024, both Defendants failed to fully comply with the Court's order, particularly regarding the production of data from the delivery vehicle's EDR, GPS, and/or other "black box" systems. (***See Exhibits A-7 Pg. 24 Request 8 and A-6 Pg. 1 Preliminary Statement***)

7. Amazon filed a Notice of Removal to remove this case to US District Court on January 08, 2025. All parties held a teleconference on March 14, 2025, during the parties Rule 26(f) conference, both Amazon and Bullard reiterated that they did not retain the full

dash cam video and comprehensive data, or the data from the delivery vehicles' onboard Event Data Recorder (EDR).

8. The full dash cam video, GPS and other comprehensive data were captured and stored in an electronic format (ESI), on a third-party (Netradyne Inc.) server. The "Event Data Recorder" captured electronic data that was stored electronically (ESI) onboard the delivery vehicle.

## III. LEGAL STANDARD

### *A. Federal Rule of Civil Procedure 37(b)*

Rule 37(b) authorizes sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Available sanctions include:

1. Directing that designated facts be taken as established;
2. Prohibiting the disobedient party from supporting or opposing designated claims or defenses;
3. Striking pleadings in whole or in part;
4. Dismissing the action or proceeding in whole or in part;
5. Rendering a default judgment against the disobedient party; or
6. Treating the failure to obey as contempt of court.

The Eleventh Circuit has held that sanctions under Rule 37(b) are appropriate where the noncompliance is attributable to willfulness or bad faith. See Bank Atlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1049 (11th Cir. 1994).

### *B. Federal Rule of Civil Procedure 37(e)*

Rule 37(e) specifically addresses the failure to preserve electronically stored information (ESI) and provides that if, ESI that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court may:

1. Upon finding prejudice to another party, order measures no greater than necessary to cure the prejudice; or

2. Upon finding that the party acted with the intent to deprive another party of the information's use in the litigation, presume the information was unfavorable, instruct the jury it may or must presume the information was unfavorable, or dismiss the action or enter a default judgment.

If electronically stored information (ESI) that should have been preserved is lost due to a party's failure to take reasonable steps, and cannot be restored or replaced, the court may:

i. Order curative measures if loss prejudices another party.

ii. Impose severe sanctions if the loss was intentional, including presumptions against the offending party, adverse jury instructions, or default judgment.

Under Chambers v. NASCO, Inc., 501 U.S. 32 (1991), courts have inherent authority to impose sanctions for bad-faith conduct, including dismissal of defenses and monetary penalties.

Courts in the Eleventh Circuit have applied Flury v. DaimlerChrysler Corp., 427 F.3d 939 (11th Cir. 2005) in determining appropriate spoliation sanctions, emphasizing that:

- A party had a duty to preserve evidence;

- The evidence was crucial to the litigation;

- The party acted in bad faith in destroying or failing to preserve the evidence;

- The opposing party suffered substantial prejudice as a result.

Further, in Silvestri v. General Motors Corp., 271 F.3d 583 (4th Cir. 2001), courts have ruled that dismissal is warranted in extreme cases where evidence destruction severely prejudices the opposing party's case. (also see: Woodard v. Wal-Mart Stores East, LP, 801 F. App'x 723 (11th Cir. 2020), Graff v. Baja Marine Corp., 310 F. App'x 298 (11th Cir. 2009))

### *C. Inherent Authority*

Beyond the Federal Rules, courts possess inherent authority to sanction bad faith conduct in litigation. The Supreme Court has confirmed that federal courts have inherent power to impose sanctions when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991), Eagle Hospital Physicians, LLC. V. SRG Consulting, Inc. 561 F.3d 1298, 1306-07 (11th Cir. 2009).

### *D. Eleventh Circuit Standard for Spoliation Sanctions*

The Eleventh Circuit has established that spoliation sanctions are appropriate where: (1) the evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant's ability to prove its prima facie case or defense. See In re Delta/AirTran Baggage Fee Antitrust Litig., 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011).

In Flury v. DaimlerChrysler Corp., 427 F.3d 939 (11th Cir. 2005), the Eleventh Circuit identified key factors in determining spoliation sanctions: (1) prejudice to the non-spoliating party; (2) whether the prejudice can be cured; (3) practical importance of the evidence; (4) whether the spoliating party acted in good or bad faith; and (5) the potential for abuse if sanctions are not imposed.

## IV. ARGUMENT

### *A. Defendants Had a Duty to Preserve Critical Evidence*

A party's duty to preserve evidence arises when litigation is "pending or reasonably foreseeable." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009). In *Harris v. Amazon Inc. et al.*, Defendants had a clear duty to preserve evidence from the moment the collision occurred, for several reasons.

The Netradyne system automatically alerted both Bullard and Amazon in real-time that Thomas was involved in an accident.

> **"To Defendant Bullard's knowledge, Amazon and DSPs are notified of DSP driver infractions, accidents, and other relevant driving related information close to the time of occurrence." (See Exhibit A-7 Bullard's Second Supp. Interrogatory 19.)**

Given the system's capabilities and the overall purpose for Amazon mandating the installation of the system into all Amazon branded vehicles. A reasonable person would have immediately been put on notice of a potential claim. (See Exhibit H-2 Pg. 7-44)

The collision resulted in significant damage to both vehicles, with Plaintiff's vehicle being rendered inoperable and requiring towing from the scene. Plaintiff and his passenger Tyrone Hill received medical attention from EMS at the scene (See Exhibit G-2) in full view of Thomas, Marrotney Green and Majid Amin, clearly indicating the potential for injury claims.

The presence of police and the investigation conducted by Officer J.P. Smith further established the seriousness of the incident would cause a reasonable person to understand the likelihood that an insurance claim or litigation would follow.

The fact that Officer Smith initially indicated he would cite Thomas for an improper left turn saying, "I'll be right back with your ticket". Only later decided he could not determine fault, demonstrated that liability was in dispute—a classic indicator that litigation may follow. (See Exhibit B-2 timestamp: 18:06:13 & 18:12:22)

Most tellingly, Marrotney Green's own conduct in creating and presenting an altered video clip which he also transferred electronically via text message or email to Bullard. Demonstrates that they recognized the importance of the evidence and its potential impact on liability determinations.

> **"Mr. Green attempted to send the footage directly from the Netradyne app on his work phone but was unsuccessful. To ensure Mr. Bullard could view the footage, Mr. Green used his personal phone to record the video playing on his work phone and sent the recording to Mr. Bullard from his personal phone." (See Exhibit A-8 Pg. 7 Interrogatory 11.)**

Despite these clear indications of foreseeable litigation, Defendants failed to implement a litigation hold or take reasonable steps to preserve critical evidence. This failure alone justifies sanctions under Rule 37(e).

***B. Defendants Failed to Preserve Electronically Stored Information That Cannot Be Restored or Replaced***

Defendants failed to preserve several categories of critical ESI that cannot now be restored or replaced. And defendants have resorted to pointing fingers at one another, each claiming that the other exercised control over the Netradyne dash cam video and comprehensive data, as well as control over the delivery vehicle and the Event Data Recorder and its contents located onboard the delivery vehicle.

> ***"Amazon objects to Request No. 5 on the ground it assumes facts not in evidence as Amazon did not own or control the 2020 Ford Transit Cargo Van. Further, Amazon objects on the basis the Interrogatory is misleading and assumes facts not in evidence as Amazon did not own any vehicle involved in the subject accident. Amazon will supplement its responses to Request No. 5 to the extent it is required by the Federal Rules of Civil Procedure." (see Exhibit H-1, Pg. 5-6 Request 5.)***

> ***"Defendant Bullard is aware that the subject vehicle contains Netradyne, an artificial intelligence ("AI") and software as a service ("SaaS") software, with features that include camera-based driver monitoring and accident alerts. Amazon provides, controls, monitors, and requires each vehicle within its Delivery Service Partner ("DSP") Program to implement the Netradyne software at all times throughout the course of driver delivery." (See Exhibit A-7 Pg. 14, Request 19.)***

The multi-angle video footage from the Netradyne "Driver i" system would have provided objective evidence of the vehicle and driver positions, movements, and signals before and during the collision. This example video shows the detail each full dash cam video provides for a proper investigation in determining liability. This video was automatically uploaded to Netradyne's secure cloud server, (See Exhibit B-6) and was available for the company to use to exonerate their driver. And place liability on the van driver that rearended the stopped vehicle, pushing it into the path of the truck. This video is a clear example of the multiple views of the Driver i system in use. Defendants Amazon and Bullard (Jermaine Bullard & Marrotney Green) viewed the full video and after realizing that it did not prove to be favorable to them, they failed to preserve the video and allowed it to be deleted by Netradyne once it reached the end of its' retention period.

The Event Data Recorder (EDR) in the delivery vehicle would have contained precise data about the vehicle's speed, braking, turn signals, and other operational parameters at the time of the collision. Defendants sent the vehicle for repairs on January 23, 2023 (See Exhibit G-3), without first preserving this data.

Amazon's sophisticated tracking systems ("Cortex"), routinely collect detailed information about the location, speed, and movements of delivery vehicles. This data would have provided objective evidence about Thomas's driving patterns leading up to the collision. Plaintiff's 30(b)(6) deposition of Bullard through Lakeya Bullard:

Page 34

**Q Okay. How often did -- or how many times,**
**I should say, did Defendant Thomas pass a delivery**
**address on October 8, 2022, and have to turn around**
**to go -- or backtrack to deliver the package?**
A I have no idea.
**Q But that's the type of data that would be**

Page 35

**where, under Amazon's control, or can you guys --**

A That would be --
**Q -- see that?**
A That would be in the Cortex system.
**Q Okay. It would be in the Cortex system.**
A Yes, sir.
**Q Okay. Now is Cortex a part of Netradyne**
**or separate?**
A It's a separate application.

(***See Exhibit F-2, Pg. 34 Line 20-25, Pg. 35 Lines 1-9***)

The Netradyne system also monitors driver behavior, and would have recorded data about Thomas's actions before, during, and after the collision.

None of this evidence can now be restored or replaced through additional discovery efforts. The original data has been permanently lost, and the only evidence that remains is the fraudulently manufactured video clip that Defendants are using to support their version of events.

### *C. Defendants Acted with Intent to Deprive Plaintiff of the Use of Information in Litigation*

The evidence demonstrates that Defendants acted with specific intent to deprive Plaintiff of critical information for use in this litigation.

The deliberate creation of edited video clips—first at the scene and later at the Amazon facility—demonstrates a calculated effort to create a false narrative favorable to Defendants while destroying or withholding the original, unaltered footage. Green's presentation of the altered video to Officer Smith at the scene shows an immediate intent to influence the official investigation and potential liability determination.

Despite having access to the full dashcam system through the Netradyne app on Thomas's work phone. Green deliberately withheld this information from Officer Smith, preventing him from viewing the complete, unaltered footage.

The creation of the second fraudulent video on October 14, 2022—six days after the accident—is particularly damning, as it shows a deliberate, calculated effort to create false evidence long after the incident.

Bullard distributed the fraudulent video to Amazon, Bullard's attorneys, Bullard's insurer, and eventually to Plaintiff through discovery, knowing it was not authentic. And further, Amazon also distributed this fraudulent video clip to their attorneys, with the knowledge that it was not an authentic Netradyne recording.

Defendants' continued failure to comply with direct court orders compelling production of specific evidence further demonstrates their intent to deprive Plaintiff of information crucial to his case.

These actions go far beyond mere negligence or inadvertence. They reflect a coordinated, intentional strategy to destroy unfavorable evidence while manufacturing favorable evidence—precisely the type of conduct that warrants the most severe sanctions under Rule 37(e)(2).

### *D. Plaintiff Has Been Substantially Prejudiced by Defendants' Spoliation*

Courts have recognized that prejudice from lost ESI under Rule 37(e) must be assessed based on the circumstances of the case. As outlined in Finding Prejudice from Lost ESI: An Analysis of Courts' Standards Under Amended Federal Rule of Civil Procedure 37(e), district courts have taken different approaches in determining whether prejudice exists. Some courts require the non-spoliating party to demonstrate plausible, concrete suggestions about the lost ESI's relevance, as seen in Matthew Enter., Inc. v. Chrysler Grp. LLC, 2016 WL 2957133 (N.D. Cal. May 23, 2016). Other courts have adopted a more lenient approach, allowing for inferences of prejudice when direct evidence is unavailable, as in Core Labs. LP v. Spectrum Tracer Servs., L.L.C., 2016 WL 879324 (W.D. Okla. Mar. 7, 2016).

The Northern District of Georgia, in Virtual Studios, Inc. v. Stanton Carpet Corp., 2016 WL 5339601 (N.D. Ga. June 23, 2016), applied a lower threshold, finding that spoliation results in prejudice when the lost evidence would have been "helpful in evaluating the merits of the parties' positions." This aligns with the principle that courts should not impose an unfairly strict standard on the non-spoliating party to prove prejudice when the contents of the lost ESI remain unknown due to the spoliating party's conduct.

Defendants' spoliation of evidence has severely prejudiced Plaintiff's ability to litigate his claims.

Without the original, complete dashcam footage from all camera angles, Plaintiff cannot definitively establish Thomas's fault in initiating an improper left turn without signaling.

Plaintiff has been forced to expend significant resources to combat the fraudulent videos evidence created by Marrotney Green, and a yet to be identified person (second video clip), and used by all defendants. Plaintiff also had to hire an audio & video forensic expert to analyze the manufactured clip.

The destruction of EDR, GPS, and telematics data has deprived Plaintiff of objective, technical evidence about the vehicles' movements, speeds, and operations at the time of the collision. Without the complete, unaltered evidence, Plaintiff cannot effectively challenge Defendants' version of events.

Defendants' tactics has prolonged this litigation by necessitating a motion to compel, hearing for the motion to compel, Plaintiff needing to learn how to properly address the US District Court for The Northern District of Georgia Atlanta Division, and now this partial motion for default judgment. This prejudice cannot be cured through any means short of the severe sanctions requested. The original evidence is permanently lost, and no alternative evidence can fully replace what has been destroyed. And the intentional destruction of the original evidence has prejudiced the Plaintiff's ability to properly litigate the following claims:

- *COUNT ONE – NEGLIGENCE*
- *COUNT TWO - NEGLIGENCE PER SE*
- *COUNT THREE - IMPUTED LIABILITY / RESPONDEAT SUPERIOR*
- *COUNT FOUR - IMPUTED LIABILITY / RESPONDEAT SUPERIOR*
- *COUNT FIVE - NEGLIGENT HIRING, TRAINING, AND SUPERVISION*
- *COUNT SIX - NEGLIGENCE*
- *COUNT SEVEN - GROSS NEGLIGENCE*
- *COUNT EIGHT - FRAUDULENT ALTERATION OF EVIDENCE*
- *COUNT NINE - APPARENT OR OSTENSIBLE AGENCY:*
- *COUNT TEN - STATUTORY EMPLOYER LIABILITY:*
- *COUNT TWELVE - BREACH OF NON-DELEGABLE DUTY*
- *COUNT NINETEEN - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

## *V. REQUESTED SANCTIONS*

Given the egregious nature of Defendants' misconduct and the substantial prejudice to Plaintiff case, Plaintiff respectfully request the Court to impose the following sanctions:

### *A. Default Judgment on Liability*

The Court enters a default judgment against all Defendants on the issue of liability. This sanction is appropriate under Rule 37(e)(2)(C) based on Defendants' intentional destruction of evidence and under Rule 37(b)(2)(A)(vi) for their violation of court orders compelling discovery.

Default judgment is appropriate where spoliation is so prejudicial that it impairs the moving party's ability to meaningfully prosecute the case. That standard is easily met here, where Defendants have destroyed all original evidence of the collision and manufactured fraudulent evidence in its place.

***B. Adverse Inference Instruction***

In the alternative, if the Court declines to enter a default judgment, it should issue an adverse inference instruction to the jury under Rule 37(e)(2)(B). This instruction should inform the jury that:

1. Defendants had a duty to preserve the original, complete dashcam footage, EDR data, GPS data, and telematics data related to the collision;

2. Defendants intentionally failed to preserve this evidence;

3. Defendants allowed a fraudulently altered video clip to replace the unfavorable evidence;

4. The jury must presume this evidence would have been unfavorable to Defendants; and

5. The jury must presume that the evidence would have shown that Thomas was negligent in making an improper left turn without signaling, causing the collision with Plaintiff's vehicle.

***C. Exclusion of Defendants' Video Evidence***

The Court should exclude from evidence the fraudulently manufactured video clip created by Marrotney Green. This sanction is appropriate under Rule 37(b)(2)(A)(ii), which allows the Court to prohibit a disobedient party from supporting designated claims or defenses.

Given the forensic evidence confirming this video was manufactured after the fact and do not represent authentic Netradyne dashcam footage, it should be excluded as both a discovery sanction and under Federal Rules of Evidence 401, 403, and 901.

***D. Monetary Sanctions***

The Court should award Plaintiff his reasonable expenses, including attorney's fees, incurred as a result of Defendants' spoliation and discovery violations. This should include:

1. Costs associated with the motion to compel and related hearings;

2. Costs for forensic analysis of the fraudulent video evidence;

3. Costs associated with this motion for sanctions; and

4. Other reasonable expenses directly related to addressing Defendants' misconduct.

These monetary sanctions are expressly authorized by Rule 37(b)(2)(C) for failure to comply with discovery orders and is appropriate under the Court's inherent authority to sanction bad-faith litigation conduct.

**E. Referral for Criminal Investigation**

Given the evidence of potential criminal conduct, including obstruction of justice, tampering with evidence (18 U.S.C. § 1512, O.C.G.A. § 16-10-94), wire fraud (18 U.S.C. § 1343), and insurance fraud, the Court should refer this matter to the appropriate authorities for potential criminal investigation.

While this is not a traditional discovery sanction, courts have recognized their obligation to report potential criminal conduct observed in civil proceedings. See, e.g., United States v. Kordel, 397 U.S. 1, 11 (1970) (noting courts' responsibility to protect the public interest in enforcing criminal laws).

**F. Previously requested discovery**

Plaintiff Harold Harris respectfully requests that this Court enter an Order compelling Defendants T'Ziah Thomas, Bullard Logistics, LLC, and Amazon Logistics, Inc. to:

Immediately produce all previously requested discovery that remain outstanding, including but not limited to documents, electronically stored information, and responses to interrogatories, requests for production, and requests for admission served pursuant to Fed. R. Civ. P. 26, 33, 34, and 36.

Allow Plaintiff's designated computer forensic experts prompt and reasonable access to Defendants' relevant digital systems—including but not limited to email servers, internal messaging platforms, dispatch logs, and GPS data systems—for the limited purpose of extracting, preserving, and analyzing data relevant to Plaintiff's claims and requested discovery, under appropriate confidentiality and protective order terms.

## *VI. CONCLUSION*

Defendants' intentional spoliation of critical evidence and persistent discovery violations have deprived Plaintiff of his right to a fair adjudication of his above listed claims. Their conduct—destroying authentic evidence while manufacturing fraudulent evidence—represents the most extreme form of litigation misconduct and warrants the most severe sanctions available.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and impose the sanctions detailed above.

Respectfully submitted this 16th day of April 2025.

Harold Harris
Pro Se Plaintiff
9950 W. Tropicana Avenue
#3104 Las Vegas, Nevada 89147
(404) 709-6361
Haroldharris2025@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the foregoing PLAINTIFF'S PARTIAL MOTION FOR DEFAULT JUDGMENT DUE TO SPOLIATION OF EVIDENCE AND DISCOVERY VIOLATIONS UNDER RULE 37(b) AND 37(e) upon all parties to this matter by US Postal Service and Email as follows:

Thomas O. Sippel, Esq.
Ethan L. Ramsammy, Esq.
McAngus Goudelock & Courie, LLC
270 Peachtree Street, N.W.,
Suite 1800 Atlanta, GA 30303
Tom.Sippel@mgclaw.com
Ethan.Ramsammy@mgclaw.com
Counsel for T'Ziah Thomas and Bullard Logistics, LLC

R. Dal Burton, Esq.
Anna H. Wyatt, Esq.
Marvis Jenkins, Esq.
Wilson Elser Moskowitz
Edelman & Dicker LLP
3348 Peachtree Road, N.E.,
Suite 1400 Atlanta, GA 30326
Dal.Burton@wilsonelser.com
Anna.Wyatt@wilsonelser.com
Marvis.Jenkins@wilsonelser.com
Counsel for Amazon Logistics, Inc.

This 16th day of April 2025.

Harold Harris
Pro Se Plaintiff


16 GB*
Speeds up to 10 MB/s** Read
keep
onn.™
USB 2.0 Flash Drive

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.

Visit ups.com for details on our privacy practices.

171604 8/18 BP

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

P

US POSTAGE AND FEES PAID
easypost
2025-04-16
89147
C6730247
Commercial
FLAT RATE LGL ENV
0901000018327

USPS PRIORITY MAIL

HAROLD HARRIS
9950 W TROPICANA AVE APT 3104
LAS VEGAS NV 89147-8551

0003

C039

SHIP TO: OFFICE OF THE CLERK / US DISTRICT COURT
75 TED TURNER DR SW STE 2211
ATLANTA GA 30303-3318

USPS TRACKING #

9405 5362 0832 6294 7888 98

PRESS FIRMLY TO SEAL

how2recycle.info
PAPER POUCH

EP14F October 2023
OD: 12 1/2 x 9 1/2

PRESS FIRMLY TO SEAL

UNIT POST

xpected delivery dat
omestic shipments i
SPS Tracking® servi
mited international i
hen used internatior
rance does not cover ce
estic Mail Manual at http
e International Mail Manu

LAT RATE
E RATE ■ ANY WE

RACKED

PS00001000014