FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 17 2025

KEVIN P WEIMER, Clerk
By: Deputy Clerk
Matthew H

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| **HAROLD HARRIS,**<br>Plaintiff,<br><br>v.<br><br>**T'ZIAH THOMAS, et.al**<br>Defendants. | CIVIL ACTION<br><br>FILE NO: 1:25-cv-00095-VMC<br>(FILE NO: 23EV002811) |

# PLAINTIFF'S REPLY WITH SUPPORTING BRIEF TO DEFENDANT AMAZON LOGISTICS, INC'S RESPONSE TO PLAINTIFF'S PARTIAL MOTION FOR DEFAULT JUDGMENT DUE TO SPOLIATION OF EVIDENCE AND DISCOVERY VIOLATIONS UNDERRULE 37(b) AND 37(e)

COMES NOW Plaintiff, Harold Harris ("Plaintiff"), pro se, and respectfully submits this Reply to the Response filed by Defendant Amazon Logistics Inc. ("Amazon") opposing Plaintiff's Partial Motion for Default Judgment Due to Spoliation of Evidence.

## Introduction

This reply addresses a narrow question: what should follow when a party with contemporaneous notice of a crash-triggered video alert, on-site human notice that an accident actually occurred, along with the damaged van, and months-long practical control over preservation avenues produces only a single curated five-second excerpt while the native clip, the surrounding minutes, and interior facility video are gone. Amazon received the same Netradyne alert its DSP received, possessed a short clip contemporaneously, and its personnel saw and grounded the damaged van at the facility. Two straightforward preservation levers were available: (1) vendor retention on Netradyne's servers through month-end plus ninety days;

and (2) imaging or removal of the SD card while the van sat out of service—meaning the *"rolling 80 hours"* wasn't rolling. Amazon later admitted it had the police report and the video clip before the initial complaint was filed, yet took none of those steps.

The missing ESI cannot be restored or replaced. A second-hand, truncated phone recording and a later five-second facility clip are not substitutes for the native file and the minutes that capture pre-impact positioning, stop/entry timing, gap acceptance, signaling, and chain-of-custody facts. Under Rule 37(e), that is prejudice. And because only hand-picked five-second excerpts survive while the more probative sources do not—despite months of opportunity, the record supports an intent finding. The Court should enter default on liability under Rule 37(e)(2) or, at minimum, impose tailored (e)(2) or (e)(1) measures that neutralize the prejudice.

**Issues Presented**

1. **Duty & Reasonable Steps.** Whether Amazon's contemporaneous automated alert, on-site human notice, and pre-suit possession of the police report and video clip triggered a duty to preserve the native Netradyne clip, surrounding minutes, and interior facility video—and whether Amazon failed to take reasonable steps by not invoking vendor retention, not imaging/pulling the SD card while grounded, and not preserving facility footage.

2. **Restore or Replace.** Whether the lost native clip and surrounding minutes—and the missing interior facility video documenting the creation/handling of a later five-second clip— "cannot be restored or replaced through additional discovery," such that truncated phone recordings, a later created five-second segment, witness recollections, or reconstruction models are not adequate replacements under Rule 37(e)(1) (see Plaintiff's supplemental ("Pl. Supp.") Ex. SE-35 timestamp 0:03:45–0:04:35).
3. **Intent & Remedy.** Whether the selective survival of five-second excerpts, the loss of native/surrounding minutes and facility footage despite months-long preservation windows, and Amazon's pre-suit notice support an "intent to deprive" finding under Rule 37(e)(2), warranting default on liability—or, alternatively, a tailored adverse-inference instruction and (e)(1) curatives (preclusions, fee shifting, and instructions).

**Chronology (key dates with pins)**

- **Oct. 8, 2022 — Crash; Netradyne event fires.** Amazon and the DSP receive a Driver i/Netradyne alert; DSPs get a short video clip attached to the alert. (CM/ECF 39, Ex. A-7, Second Supp. Resp. to Interrog. No. 19, at 14.)

- **Oct. 8, 2022 — On-scene phone clip (truncated) shown to police.** Fleet Manager Green records **a portion** of the dash-cam video on his personal phone and shows it to Officer J.P. Smith; the body-cam captures Green playing the clip at 0:11:03–0:11:19 and again at 0:26:58–0:27:10. (CM/ECF 39, Ex. B-2.)
- **Oct. 8, 2022 — Officer charging decision influenced.** After a second viewing and intercession by another officer relaying Green's narrative, Officer Smith ultimately does not issue a citation (0:33:40–0:34:13). (CM/ECF 39, Ex. B-2.)
- **Oct. 8, 2022 — Human notice at facility (RTS hand-off) & van grounded.** Thomas identified "employees of Amazon" as having conducted some form of investigation; undelivered packages were processed at the **Return to Station (RTS)** area; the van returned to the distribution center and was **taken out of service**. (CM/ECF 39, Ex. A-2, Interrog. No. 4(c), at 3; CM/ECF 75-24, Green Dep. 16:9–16; 16:21–25; 17:1–14.)
- **Oct. 14, 2022 — Second 5-second clip created inside Amazon facility (post-hoc).** Created **inside the facility** (in view of interior cameras) by an as-yet-unidentified person **using an iPhone XS Max**; Plaintiff's position is that this later 5-second clip was **not** the same video clip sent to Bullard on

Oct. 8 (that was the on-scene phone recording). (CM/ECF 79, at 17 n.4; CM/ECF 39, Ex. A-7, Interrog. No. 19, at 14.)

- **Oct. 8, 2022 → Jan. 29, 2023 — Server-side retention window (month-end + 90).** Netradyne alert clips retained on vendor servers through the end of the alert's month + 90 days (≈120). For an Oct. 8 alert, that runs to Jan. 29, 2023. (CM/ECF 79, at 17 n.4.)
- **Oct. 14, 2022 → Feb. 17, 2023 — Bullard states that a incident report was delivered to Amazon shortly after the accident. Amazon acknowledges it already had police report + 5-sec clip prior to the filing of the initial complaint.** Counsel's on-record 30(b)(6) statement. (CM/ECF 75-25, 4:8–25 & 5:1–8.)
- **Rolling SD-card overwrite rule (paused while grounded).** Amazon admits the onboard SD card "records for **80 hours on a rolling basis**"; with the van grounded, no new recording accrued. (CM/ECF 75-29, Amazon's RFAs, No. 2; CM/ECF 75-24, Green Dep. 16:9–16.)
- **Oct. 22, 2022 → Feb. 17, 2023,** It is unlikely that Amazon somehow overlooked Bullard's damaged van during their roughly 9 inspections of Bullard fleet of vehicles in this time frame. (Pl. Supp. Ex. SE-9, SE-11 [**filed under seal**])

- **Nov. 25, 2022 → Peak delivery season started around Black Friday,** not late January 2023, as Mr. Green testified to. (Pl. Supp. Ex. SE-36 timestamp 0:03:57–0:04:03)
- **Jan. 23, 2023 — Van to repair shop.** (CM/ECF 39, Ex. G-3, Sparkles Auto Care.)
- **Jan. 29, 2023 — End of server retention window.** (Computed from month-end + 90.)
- **Feb. 17, 2023 — Repair balance paid.** (CM/ECF 39, Ex. G-3.)
- **May 10, 2023 — Complaint filed.** (CM/ECF 1 Ex. A)

**Legal Standard (Fed. R. Civ. P. 37(e))**

Rule 37(e) applies when electronically stored information (ESI) that should have been preserved is lost because a party failed to take reasonable steps, and the information cannot be restored or replaced through additional discovery. Once litigation is reasonably foreseeable, the duty to preserve attaches and routine deletion/overwriting must be suspended. "Reasonable steps" are proportional and include measures within a party's practical control—e.g., issuing holds; invoking vendor retention; imaging or removing local media; and preserving site cameras. "Restore or replace" asks whether an equivalent source of the same ESI exists (another custodian/system/native export). Witness recollections or expert

reconstructions are not restoration of missing video frames, telemetry metadata, or chain-of-custody records. If Rule 37(e) is satisfied and the Court finds prejudice, it may order curative measures "no greater than necessary" under (e)(1). If the Court finds intent to deprive, (e)(2) authorizes adverse-inference instructions, issue preclusion, or default. In evaluating "reasonable steps," courts weigh foreseeability, control (including control via contracted vendors), and feasibility windows—such as (i) a month-end + 90 days server-retention path through the Netradyne portal for alert clips; (ii) a paused SD-card overwrite while the grounded van accrued no new recorded hours, permitting pull/imaging; and (iii) preservation of interior facility cameras (e.g., the Oct. 8 return and Oct. 14 clip-creation event).

**Argument**

**A. Duty to preserve attached immediately (automated alert, human notice, and degraded copy)**

Amazon's duty to preserve attached the moment the Netradyne event fired because Amazon received the same near-real-time alert that Bullard received, along with camera-based incident data.[1] Bullard's Second Supplemental Response confirms

[1] Even absent a 'Collision' label, Amazon acknowledges 'Low impact' and 'High G force' alerts fired in Oct. 2022, which are crash-proxy events that trigger the same preservation duty. (CM/ECF. 79 at 12–13 ¶ 3)

Amazon "provides, controls, [and] monitors" Netradyne across DSP vehicles and that "Amazon and DSPs are notified of … accidents … close to the time of occurrence." (CM/ECF 39, Ex. A-7, Second Supp. Resp. to Interrog. No. 19, at 14.) In addition, both Bullard and driver Thomas followed incident-report protocols and alerted Amazon personnel directly; Thomas identifies "employees of Amazon" as having conducted an investigation relating to this incident, confirming on-site notice independent of the automated alert. (CM/ECF 39, Ex. A-2, Interrog. No. 4(c), at 3.) And Amazon admits the Netradyne storage card "records for 80 hours on a rolling basis," making immediate retention of surrounding minutes both feasible and required. (CM/ECF 75-29, Amazon's RFAs, No. 2.) Because the SD card overwrites only after ~80 recorded hours—and the van was grounded after the crash—no new hours accrued; the accident day became last-in data and would not be overwritten until the vehicle returned to service and logged ~80 additional driving hours. (Grounded/out-of-service: CM/ECF 75-24, Green Dep. 16:9–16; 16:21–25; 17:1–14; repair intake/payment dates: CM/ECF 39, Ex. G-3.)

**Additional trigger—receipt of an inferior reproduction.** Amazon's duty also attached when it received a degraded, phone-recorded excerpt from its own DSP instead of the native Netradyne export with metadata. Knowing the vendor and the portal, a reasonable custodian does not stop at a truncated copy; it goes to the source

for the native file and surrounding minutes (month-end + 90 retention) and directs preservation of the SD card while grounded.

**B. Amazon's "no collision alert" dodge"**

- **Alert label is irrelevant—Amazon still had contemporaneous notice and video.** Amazon's own description establishes that Driver i alerts are automatically sent to both Bullard and Amazon and include a short clip; whether October 2022 lacked a specific "collision" label does not change that Amazon received a safety-event alert with video in real time.
- **Human notice confirmed an actual accident at Amazon's facility.** Green notified an Amazon employee he was heading to the scene; the van then returned to the distribution center and was taken out of service—on-site visibility of a damaged Amazon-branded van (not a "possible" event).
- **Plenty of time to preserve on Netradyne's servers—even beyond the 80-hour SD-card window.** Alert clips reside on Netradyne's servers until the end of the month plus 90 days; for an Oct. 8, 2022 alert, that runs to Jan. 29, 2023. And because the van was grounded, the SD card wasn't rolling; overwrite would not begin until ~80 **new** driving hours after return to service. (See CM/ECF 79, at 17 n.4; CM/ECF 75-24, Green Dep. 16:9–16; 16:21–25; 17:1–14; CM/ECF 39, Ex. G-3.)

**Therefore,** Amazon had contemporaneous automated notice, on-site human notice, and a feasible preservation path—but did not take reasonable steps, satisfying Rule 37(e).

**C. "Loss of access" fails—Amazon had practical control and feasible preservation steps**

- **Practical control via Netradyne.** Amazon mandated Netradyne's Driver i across DSP vans; alerts and clips came to Amazon; the portal retained clips to month-end + 90; longer retention could be requested.
- **"80 hours" is incomplete.** SD overwrite is **recorded hours**, not clock time; the van was grounded, and server retention ran to Jan. 29, 2023.
- **Physical SD card was preservable.** With the van out of service, Amazon could direct the DSP to pull or image the SD card.
- **Anthony v. Alvarez is inapposite.** There the vendor **went out of business**; here Netradyne remained operational.
- **Pre-suit possession.** Amazon's 30(b)(6) admission confirms pre-suit possession of the police report and clip.

**Bridge to remedies.** Because Amazon possessed both practical control (Netradyne portal and retention lever) and physical access (grounded van/SD card and interior cameras), this is not a "loss of access" case but a failure-to-preserve case; the

resulting evidentiary gap cannot be cured by testimony or reconstruction. Accordingly, the Court should enter default on liability under Rule 37(e)(2); failing that, impose the (e)(2) adverse-inference or the (e)(1) curative measures outlined below to neutralize the prejudice.

**D. SD-card retention extended by grounding (no overwrite until ~80 new hours accrued)**

- **Rolling ≠ calendar.** The SD card overwrites after ~80 **recorded** hours, not after 80 clock hours. When the van is grounded, no new hours accrue, so the crash day remains last-in data.
- **Here, the overwrite clock was paused.** The van was grounded after the Oct. 8 crash, delivered to the repair shop on **Jan. 23, 2023**, and the repair balance was paid on **Feb. 17, 2023**. From Oct. 8 → at least Jan. 23, nothing recorded over the accident day; even after return to service, overwrite would not occur until ~80 additional **driving** hours accrued. (CM/ECF 75-24, 16:9–16; 16:21–25; 17:1–14; CM/ECF 39, Ex. G-3.)
- **Reasonable steps were available.** Amazon could request vendor retention through **Jan. 29, 2023** and have the DSP pull or image the SD card while grounded.

**E. "Restore or replace" does not mean "reconstruct or ask witnesses"**

- **Rule focus.** "Restore or replace" asks whether the **missing ESI** (or a true equivalent source of that same ESI) can be obtained—not whether testimony or modeling can substitute.
- **Unique probative value.** The missing minutes would show pre-impact positioning (lane vs. shoulder), stop duration and entry timing, gap acceptance/speeds/headway, sightlines/driver look-outs, and signals/steering corrections. Cross-examination can test memory, but it cannot recreate lost frames.
- **Live avenues existed.** The vendor server window (Oct. 2022 → **Jan. 29, 2023) and** the paused SD-card window were the very "additional discovery" avenues to obtain surrounding video from the vendor or the card while it still existed.

**F. Intent to deprive (Rule 37(e)(2))—circumstantial indicators tied to facility cameras**

- **Selective preservation / curation.** Only a 5-second excerpt survived contemporaneously, and a second 5-second clip was created days later inside the facility. The failure to preserve the longer dash-cam sequence and the interior footage that would show who created the later clip supports an inference that Amazon curated what the record would contain.

- **Notice + opportunity + failure.** Amazon had contemporaneous automated notice and later human, on-site notice; despite an ~80-hour SD window and a separate month-end + 90-day server window (Oct. 8 → Jan. 29), Amazon did not request vendor retention of surrounding minutes or preserve facility footage.
- **Control and policies.** Amazon mandates Netradyne for DSP vans and operates facilities with interior cameras; both sources were within its practical control. Not preserving either the longer dash-cam sequence or the interior footage that would document who made the later clip permits the inference that evidence was withheld to deprive Plaintiff of its use.
- **Chain-of-custody gap.** Facility video from Oct. 14 would identify who created the later clip, the device used, and any Amazon personnel present—facts central to authenticity and potential alteration. The absence of that footage, despite obvious relevance, supports an (e)(2) inference.

**G. What the three "videos" are—and why they aren't equivalent**

**1) Native Netradyne alert clip (automatically generated—longer than the 5-sec excerpts shown later).** Auto-captured when the safety event fired and uploaded to Netradyne's servers; in the portal an alert tile opens beyond 5–6 seconds, with native timestamps/telemetry. Retained through the end of the month plus 90 days. This is

the **original ESI** and the benchmark for any "restore or replace." (See, e.g., CM/ECF 39, Ex. F-1, p.22, 13–18; CM/ECF 39, Ex. A-7, p.14 Second Supp. Response 19.)

**2) On-scene phone recording by Fleet Manager Green (non-native, truncated)** — now only visible via the officer's body-cam. Green could not transmit from the app at the scene, so he recorded only a portion of the alert video on his personal phone and showed that phone video to responding officers; what survives is the officer's body-cam capturing Green playing his phone video. This non-native, abbreviated excerpt cannot substitute for the native portal file (with metadata) or the missing surrounding minutes under Rule 37(e). (CM/ECF 39, Ex. B-2, 0:11:03–0:11:19; 0:26:58–0:27:10.)

**3) The 2nd 5-second clip created inside the Amazon facility six days later (post-hoc creation).** Created **Oct. 14, 2022,** inside Amazon's facility (in view of interior cameras) by an as-yet-unidentified person using an iPhone XS Max (CM/ECF 39 Ex. E-2 at 3 ¶ 2); Plaintiff's position is that this later 5-second clip was not the clip sent to Bullard on Oct. 8 (that was the on-scene phone recording). This is curation, not restoration; the interior cameras (Oct. 8 return; Oct. 14 creation event) would have shown who created/handled this clip and who was present—authentication and intent facts that testimony cannot replace if the footage was not preserved. (CM/ECF 79, at 17 n.4.)

**H. Prejudice: why the loss matters and can't be cured**

- **Missing minutes and camera views are uniquely probative and not captured by the 5-second fragments or memories.** The longer sequence would show pre-impact positioning, stop/entry timing, gap acceptance/speeds/headway, sightlines/driver look-outs, and signals/steering corrections. Rule 37(e) asks whether the lost ESI can be restored or replaced—not whether subjective recollections can substitute for continuous, objective video.
- **"Reconstruction" is not restoration.** A 5-second clip plus expert modeling still leaves unrecorded seconds and angles to assumptions, undermining precision on timing, motion, and signaling.
- **Facility interior video loss causes distinct** prejudice (on-site notice + chain-of-custody + intent / RICO predicates). The second 5-second clip was created inside Amazon's facility on October 14, 2022, in full view of interior cameras. Those cameras would have shown (i) how many Amazon personnel observed the damaged van on October 8 when it returned and was grounded, and (ii) on October 14, who created the second clip, what device was used, and who was present during creation—facts supporting an intent inference under Rule 37(e)(2). Plaintiff further contends the second clip was

fraudulently created to mask Thomas's liability and prejudice Plaintiff; its use in Bullard's insurance claim constitutes **insurance fraud**, and its electronic transmission to the insurer constitutes **wire fraud**—alleged **predicate acts** supporting civil RICO and civil conspiracy theories to be developed separately. By failing to preserve (or by deleting) the interior footage of the **October 14** creation event, Amazon assisted Bullard's cover-up, knowingly or unwittingly.[2]

**Therefore,** the lost video and facility footage "cannot be restored or replaced through additional discovery," and their absence materially impairs Plaintiff's ability to prove fault, authenticate the surviving clip, and establish chain-of-custody—establishing prejudice under Rule 37(e)(1).

**I. Case-law carve-outs**

- **ROW Equip.** does not authorize swapping testimony for lost video. Rule 37(e) looks to whether ESI (or an equivalent source of that ESI) exists. Here, Amazon had month-end + 90 server retention and a paused SD card—actual

[2]RICO predicate clarification. References to "insurance fraud" and "wire fraud" are made as alleged predicate acts for potential civil RICO (18 U.S.C. 1961(1)), not as a standalone criminal cause of action. The point here is notice, intent, and chain-of-custody prejudice under Rule 37(e); RICO/Conspiracy theories will be pled and brief separately.

ESI levers it did not use. (ROW Equip., Inc. v. Terex USA, LLC, No. 5:16-cv-60, 2019 WL 6698142 (S.D. Ga. Dec. 6, 2019)).

- **Pace** addressed narrow EDR metrics (speed/brake), not native dash-cam video plus facility footage with a live vendor-retention path. (Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 1:12-cv-3096-AT, 2014 U.S. Dist. LEXIS 141908 (N.D. Ga. Aug. 21, 2014)).
- **Anthony** turned on a vendor that went out of business; Netradyne did not. This is failure to preserve, not loss of access. (Anthony v. Barba Alvarez, No. 7:20-cv-191 (HL), 2022 U.S. Dist. LEXIS 162515 (M.D. Ga. Sept. 9, 2022)).

**J. Requested relief under Rule 37(e)**

**Primary remedy — Rule 37(e)(2) default on liability.** Plaintiff respectfully requests **default judgment on liability**. Amazon had contemporaneous automated and human notice; multiple, feasible preservation paths (month-end + 90 server retention; a paused SD-card overwrite while the van was grounded; facility interior video); yet only curated five-second excerpts survive while the native alert file, surrounding minutes, and facility creation-event footage are gone. Taken together with Amazon's pre-suit clip/police-report admission and the later facility-created

five-second clip, the record supports an intent to deprive finding and shows that lesser remedies cannot cure the prejudice.

**If the Court declines default:**

- **37(e)(2) alternative:** a **tailored adverse-inference instruction** directing the jury to presume the lost video would have been unfavorable to Amazon on pre-impact positioning; lane vs. shoulder; stop duration/entry timing; turn-signal timing (unless Amazon proves otherwise by a preponderance).
- **37(e)(1) alternatives:** permit full spoliation evidence and argument; preclude "5 seconds = complete/best" and "just reconstruct it" positions; order narrow issue preclusion (existence of longer video; van returned damaged/grounded; Oct. 14 clip-creation at the facility); shift fees/costs; and give a curative instruction allowing the jury to weigh Amazon's preservation failures.

**K. Respondeat superior via program-level control.**

The same facts that establish practical control for Rule 37(e) also establish Amazon's right of control over Bullard sufficient for respondeat superior: Amazon drafted and mandates DSP Program Policies—including accident-notice rules "to ensure Amazon employees … investigating potential claims receive

proper and timely notice"—and it required and provisioned the Netradyne/Driver i system in Amazon-branded vans, receiving the same alerts (and short clips) the DSP receives, across all DSPs. Amazon's filing further acknowledges that alert clips remain on vendor servers through month-end + 90 days, and that Green stated Amazon placed the van out of service, reflecting operational control. Amazon also owns the routing software (Flex/GPS) governing the manner and method of deliveries. More over, Amazon attaches ownership of the DSP operated vehicles to itself within its own training documents for the DSP program. (Pl. Supp. Ex. SE-3 at 1.2 [**filed under seal**]) These policy-level directives, technology mandates, and day-to-day authority show Bullard acted within Amazon-controlled operations, supporting respondeat superior on this record. Measured under Eleventh Circuit law, 'control' focuses on the right to direct the time, manner, and method of performance (Cobb), assessed through practical, day-to-day authority over work (Patterson & Wilder) using multi-factor guides (Martinez-Mendoza; Layton), with vicarious liability turning on fact-specific agency indicators rather than labels (Franza). (Cobb v. Sun Papers, Inc., 673 F.2d 337 (11th Cir. 1982), Patterson & Wilder Constr. Co. v. United States, 226 F.3d 1269 (11th Cir. 2000), Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200 (11th Cir. 2003), Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225 (11th Cir. 2014).

## Conclusion

Amazon had contemporaneous automated notice (Netradyne alert + clip), on-site human notice when the damaged van returned and was grounded, and months-long, feasible preservation levers (vendor server retention through month-end + 90; a paused SD-card overwrite while out of service; and interior facility cameras). Yet only curated five-second excerpts survive while the native clip, surrounding minutes, and facility video are gone. The lost ESI cannot be restored or replaced through additional discovery, and the record supports an intent-to-deprive finding. The Court should enter default on liability under Rule 37(e)(2). If the Court declines default, it should impose a tailored adverse-inference instruction and the (e)(1) curatives outlined above to neutralize the prejudice.

Respectfully submitted this 16th day of September 2025

*/s/ Harold Harris*

Harold Harris
Pro Se Plaintiff
9950 W. Tropicana Ave. Apt. 3104
Las Vegas Nevada 89147
(404) 840-6654
haroldharris2025@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this day served a true and correct copy of the foregoing Plaintiff's Reply to Defendant Amazon Logistics, Inc's Response To Plaintiff's Partial Motion For Default Judgment Due To Spoliation of Evidence and Discovery Violations Under RULE 37(b) AND 37(e)_upon all parties via electronic mail service addressed to their counsel of record.

Logan Brown, Esq.
Mark Edwards, Esq.
McAngus Goudelock & Courie, LLC
P.O. Box 57365

270 Peachtree Street, N.W., Suite 1800
Atlanta, GA 30343
Counsel for:
T'Ziah Thomas
Bullard Logistics, LLC.
Logan.brown@mgclaw.com
Mark.edwards@mgclaw.com

R. Dal Burton, Esq.
Anna H. Wyatt, Esq.
Marvis Jenkins, Esq.

Wilson Elser Moskowitz Edelman & Dicker
3348 Peachtree Road, N.E., Suite 1400

Atlanta, GA 30326
Counsel for:
Amazon Logistics, Inc.

Dal.Burton@wilsonelser.com
Anna.Wyatt@wilsonelser.com
Marvis.Jenkins@wilsonelser.com

This 16th day of September, 2025.

Harold Harris
Pro Se Plaintiff
9950 W. Tropicana Avenue
#3104
Las Vegas, Nevada, 89147
Phone: (404) 840-6654
(404)709-6361
Haroldharris2025@gmail.com

**Extremely Urgent**

Scan QR code to schedule a pickup

**Domestic Shipments**
- To qualify for the letter correspondence, urgent 8 oz. or less. UPS Expres or weighing more than

**International Shipme**
- The UPS Express envel value. Certain countries ups.com/importexport
- To qualify for the letter UPS express envelopes

**Note:** UPS Express enve electronic media contai Do not send cash or cas

HAROLD HARRIS
9950 W TROPICANA AVE APT 3104
LAS VEGAS NV 89147

0.4 LBS LTR 1 OF 1

SHIP TO:
OFFICE OF THE CLERK / US DISTRICT C
75 TED TURNER DR SW STE 2211
ATLANTA GA 30303-3318

GA 303 9-02

UPS NEXT DAY AIR SAVER 1P

TRACKING #: 1Z Y11 40K 13 0768 3674

BILLING: 3RD PARTY

XOL 25.09.09 NV45 38.0A 09/2025*

Express®

Expeditec

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

t out from the sa

personal information, please see the UPS Privacy Notice at www.ups.

010195103 5/22 PAC United Parcel Se

# Express

Extremely Urgent

OFFICE OF THE CLERK / US DISTRI
75 TED TURNER DR SW
STE 2211
ATLANTA GA 30303

P :RED8L.2 :2MY 1 222

CNN-5190

1ZY1140K130768 3674 2330

SAT08485 XLE 01-1 Sep 17 06:59:49 2025
US 3032 HIPPS 25.3.2 SATOLR

ups