**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

HAROLD HARRIS,

Plaintiff,

v.

T'ZIAH THOMAS, BULLARD LOGISTICS, LLC, and AMAZON LOGISTICS, INC.,

Defendants.

Civil Action No. 1:25-cv-00095-VMC

**ORDER**

Several motions are pending before the Court in this case, but this Order just deals with the following:

- Amazon Logistics, Inc.'s ("Amazon") Partial Motion to Dismiss ("Motion to Dismiss," Doc. 12);

- Plaintiff Harold Harris's Motion to Remand to State Court (Doc. 13) and Corrected Motion to Remand to State Court (Doc. 16) (collectively, "Motion to Remand").

For the reasons that follow, the Court grants the Partial Motion to Dismiss and denies the Motion to Remand.[1]

[1] Plaintiff has filed a Partial Motion for Default Judgment Due to Spoliation of Evidence and Discovery Violations Under Rule 37(b) and 37(e) (Doc. 39). But even if the Court were to grant that motion, it would still have to consider the substance of Amazon's Motion to Dismiss because a defendant in default as a sanction still has the right to challenge the plaintiff's legal entitlement to relief "as not offering a sufficient basis for the judgment"—"defendants can forfeit the ability to contest

**Background**[2]

On October 8, 2022, at approximately 5:25 P.M., Plaintiff was driving a 2016 Chevrolet Suburban on Jett Ferry Road at or near its intersection with Jett Ferry Manor in Sandy Springs, Fulton County, Georgia. (Doc. 7 ¶ 6). At the same time, Defendant Thomas was driving a 2020 Ford Transit cargo van owned or leased by Defendant Bullard and covered by a wrap branding Defendant Amazon's business services, logo and trademarks. (*Id.* ¶ 7). At the intersection of Jett Ferry Road and Jett Ferry Manor, Defendant Thomas's vehicle was stopped facing southwest, on the side of the road in a parked like position without any turn signals activated. (*Id.* ¶ 8). While traveling southwest on Jett Ferry Road, Plaintiff attempted to move around and pass Defendant Thomas's vehicle. (*Id.* ¶ 9). Without warning, and without observing that it was unsafe to do so, Defendant Thomas attempted to turn left as Plaintiff was passing his vehicle, causing a major collision with the rear passenger side of Plaintiff's vehicle. (*Id.* ¶ 10). The force of the impact caused disabling damage to Plaintiff's vehicle, which had to be towed from the scene by

---

the truth of facts asserted, but a default does not give the court powers beyond those established by law." *Hornady v. Outokumpu Stainless USA*, LLC, 118 F.4th 1367, 1383 (11th Cir. 2024).

[2] Because this case is before the Court on a Motion to Dismiss, the following facts are drawn from Plaintiff's Fourth Amended Complaint ("Complaint," Doc. 7) and are accepted as true. *Cooper v. Pate*, 378 U.S. 546, 546 (1964). Quotation marks are omitted from excerpts from the Complaint to improve readability.

a wrecking company. (*Id.* ¶ 11). At all times pertinent to this action, Defendant Thomas was acting in the course and scope of his employment with Defendant Bullard, as a delivery driver for Defendant Amazon. (*Id.* ¶ 12).

At all times pertinent to this action, Defendant Thomas was acting in the course and scope of his employment with Defendant Amazon as a delivery driver, because Defendant Amazon exercised direct control over the time, manner, and method of Defendant Thomas's delivery activities, including:

> • Imposing strict delivery schedules with little margin for delays.
>
> • Using electronic monitoring systems to track driver locations, routes, and performance in real-time.
>
> • Enforcing performance metrics and issuing penalties or disciplinary actions for failing to meet Amazon's delivery standards.

(*Id.* ¶ 13).

Amazon's DSP program incentivized speed and volume of deliveries over safety by setting unrealistic delivery quotas and imposing penalties on drivers and DSPs for delays or noncompliance, creating pressure on drivers to engage in unsafe driving practices. (*Id.* ¶ 14). Amazon was aware, through internal documents, reports, and communications, of the risks associated with its DSP program, including high accident rates and numerous safety complaints from drivers, yet failed to take adequate steps to mitigate these risks. (*Id.* ¶ 15). Despite

its awareness of the risks, Amazon failed to provide sufficient training or supervision to its delivery drivers and continued to enforce policies that encouraged or mandated unsafe driving behavior. (*Id.* ¶ 16).

Mr. Harris alleges that Fleet manager Marrotney Green and Dispatcher Majid Amin, acting on behalf of Defendant Bullard Logistics LLC ("Bullard Logistics"), in their respective roles of employment, tampered with evidence by editing the dashcam video footage of the accident in order to influence the investigating officer, Officer J.P. Smith, to not issue Defendant Thomas a citation for making an improper left turn. (*Id.* ¶ 17). Mr. Green and Mr. Amin also allegedly conspired to change Defendant Thomas's account of the accident to align with the edited video footage, thereby distorting the facts surrounding the incident. (*Id.* ¶ 18). Defendant Bullard Logistics, with knowledge of the edited video, participated in the conspiracy by allowing the altered footage to be presented as the sole piece of documented evidence, despite knowing or having reason to know that the video was not in its original format. (*Id.* ¶ 19). Defendant Amazon, exercising significant control over both Bullard Logistics and its employees, including Marrotney Green, Majid Amin, and T'Ziah Thomas, with knowledge of the edited video, participated in the conspiracy by allowing the altered footage to be presented as the sole piece of documented evidence, despite knowing or having reason to know that the video was not in its original format. (*Id.* ¶ 20).

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For the purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true; however, the court is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although the plaintiff is not required to provide "detailed factual allegations" to survive dismissal, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555.

A pro se complaint must be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Schwarz v. Ga. Composite Med. Bd.,* No. 21-10288, 2021 WL 4519893, at *2 (11th Cir. Oct. 4, 2021) (quoting *GJR Invs., Inc. v. Cnty of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## Discussion

### I. Motion to Remand

This case was originally filed in Fulton County State Court on May 10, 2023. (Doc. 1-1). Plaintiff filed a Fourth Amended Complaint on December 9, 2024 which added, among other claims, a civil claim under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. (Doc. 7 ¶¶ 90–99). Amazon removed this case on the basis of federal question jurisdiction based on the addition of the federal claim on January 8, 2025. (Doc. 1).

The basis of Mr. Harris's Motion to Remand was a purported "Corrected" Fourth Amended Complaint which was attached as Exhibit 1 to the Corrected Motion to Remand (Doc. 16-1). But at a telephone conference with the Court, Mr. Harris confirmed his intention to keep his federal claims (Transcript of April 29, 2025 Telephone Conference 11:1–5, Doc. 53). The Court memorialized his intention to keep his federal claims in its Scheduling Order. (Doc. 48 at 2) ("The Court notes that the Fourth Amended Complaint is the operative complaint.").

Having confirmed his intention to proceed with his federal claims, the basis for Mr. Harris's Motion to Remand is negated. For the reasons that Amazon gave in its Response to the Motion to Remand, the Court has original jurisdiction of federal question claims, and therefore removal was proper. (Doc. 56 at 3–4). Moreover, the Court agrees it has supplemental jurisdiction over Mr. Harris's state

law claims because they all arise from the same accident and are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). The Court will not remand the case.

## II. Motion to Dismiss

Amazon's Motion to Dismiss challenges several counts of Mr. Harris's operative Complaint. The Court's Order tracks Amazon's arguments in roughly the same order they are presented.

### A. Civil RICO

Amazon first seeks dismissal of Counts XIII and XIV, which are both for civil RICO under Georgia and federal law. Amazon argues that Plaintiff's federal RICO claim must fail because Mr. Harris's allegations are limited to personal injuries. (Doc. 12 at 5–6) (citing *Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988). But after the Motion to Dismiss was filed, the Supreme Court abrogated *Grogan* and held that federal RICO "does not preclude recovery for all economic harms that result from personal injuries." *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025).[3] Amazon makes no other argument as to why this claim should be dismissed, and while the Court has doubts as to whether Mr. Harris's claims meet

[3] Georgia's RICO Act never had a personal injury bar. *Reaugh v. Inner Harbour Hosp., Ltd.*, 447 S.E.2d 617, 622 (Ga. Ct. App. 1994) ("Unlike the federal act, [Georgia's act] does not limit damages to injuries to business or property.").

the relevant pleading standard, it was incumbent on Amazon to make that argument. So, this aspect of the Motion to Dismiss must be denied for now. *But see* Fed. R. Civ. P. 12(h)(2) (defense of failure to state a claim not waived by failure to argue it in a pretrial motion).

**B. Product Liability**

Amazon next seeks dismissal of Count XVI (Strict Liability – Design Defect) and Count XVII (Strict Liability – Marketing Defect). Mr. Harris's Complaint alleges that the DSP Program, "as a structured operational framework marketed and sold to independent delivery service providers, constitutes a 'product' under applicable law." (Doc. 7 ¶ 120; *see also id.* ¶ 111). Amazon argues that Georgia's strict liability statute only applies to tangible personal property, not business methods. (Doc. 12 at 8–9) (citing O.C.G.A. § 51-1-11(b)). Mr. Harris does not respond to Amazon's argument, and so he abandons these claims. *Holland v. Dep't of Health & Hum. Servs.*, 51 F. Supp. 3d 1357, 1376 (N.D. Ga. 2014). The Motion to Dismiss will be granted as to product liability.

**C. Evidence Tampering**

Count VIII of the Complaint is for "Fraudulent Alteration of Evidence." Mr. Harris alleges that the actions of Defendants in presenting allegedly doctored dashcam video "constitute intentional and fraudulent alteration of evidence in violation of O.C.G.A. § 16-10-94." Amazon argues that this penal statute does not

create a private right of action. Other district courts have reached that same conclusion. *Hudson v. Macon Bibb Plan. & Zoning Comm'n*, No. 5:24-CV-00259-TES, 2024 WL 4608577, at *1 (M.D. Ga. Oct. 29, 2024) (quoting *Jastram v. Williams*, 623 S.E.2d 686, 687 n.1 (Ga. Ct. App. 2005)).[4] Mr. Harris did not substantively respond to this argument, aside from using it as a basis to justify punitive damages (Doc. 15 at 9). The Court agrees with Amazon that there is no private right of action to enforce O.C.G.A. § 16-10-94.

**D. Civil Conspiracy**

Amazon next seeks dismissal of Count XV for civil conspiracy based on Mr. Harris's failure to allege an underlying tort.[5] "In the absence of any predicate tortious conduct, Plaintiff cannot allege a viable civil conspiracy claim." *Youngblood-West v. Aflac Inc.*, No. 4:18-CV-83 (CDL), 2018 WL 10562576, at *15 (M.D. Ga. Nov. 9, 2018), *aff'd*, 796 F. App'x 985 (11th Cir. 2019) (citing *Mustaqeem-Graydon v. SunTrust Bank*, 573 S.E.2d 455, 461 (Ga. Ct. App. 2002)). In his Complaint, Mr. Harris alleges that

---

[4] Older cases have speculated about the existence of a "tort claim for obstruction of justice," but those cases only assumed the possibility of its existence for the purpose of dismissing it. *Hodges v. Tomberlin*, 319 S.E.2d 11, 14–15 (1984) (citing *Martin v. Martin*, 163 S.E.2d 254, 256 (Ga. Ct. App. 1968)). The Court could locate no case that found such a claim existed.

[5] It appears Amazon accidentally replicated its heading from its previous section regarding Count VIII, but from context it is clear this section targets Mr. Harris's civil conspiracy claim.

> Defendant Bullard Logistics LLC, and its employees engaged in a conspiracy to commit unlawful acts, including tampering with evidence, insurance fraud, and wire fraud, in furtherance of a scheme to evade liability and obstruct justice [and] Defendant Amazon is liable for the actions of Defendant Bullard Logistics LLC., and its' employees under the doctrine of respondeat superior.

(Doc. 7 ¶101, 104). Similarly, in his Response to the Motion to Dismiss, Mr. Harris argues "[t]he conspiracy involved tampering with evidence, obstruction of justice, insurance fraud, and wire fraud." (Doc. 15 at 10).

The Court has already held that tampering with evidence is not a tort but a crime. Mr. Harris points to no case law establishing a privately enforceable tort for criminal insurance fraud or wire fraud, and the Court doubts that such claims exist. Fraud in the abstract, however, is a tort. And a company can be vicariously liable, under a respondeat superior theory, for harm caused via conspiracy to commit fraud committed by its employees, but only if the actions of the conspirators were within the scope of their employment. *Hosch v. Wachovia Bank*, N.A., 815 F. App'x 352, 355 (11th Cir. 2020). Amazon's Motion to Dismiss does not engage with the elements or pleading requirements of fraud and does not dispute that the other defendants were acting within the scope of their employment. That does not mean Amazon cannot dispute those contentions later in a motion for summary judgment or at trial. But for now, the claim proceeds.

### E. Workers' Compensation

Count X is for Workers' Compensation under § 34-9-8. As an initial matter, the Court ordinarily is precluded from exercising removal jurisdiction over an action "arising under the workmen's compensation laws" of a state. 28 U.S.C. § 1445(c). However, an exception exists for a statutorily non-removable claim that is "fraudulently pled." *Cushwa v. Ross*, 950 F. Supp. 2d 1276, 1278 (N.D. Ga. 2013).[6] To remove such a claim, there must be "no possibility that the plaintiff can establish a cause of action." *Accord Engelbrecht v. Am. Claims Mgmt., Inc.*, No. 2:25-CV-04014, 2025 WL 1558519, at *2 (W.D. Mo. June 2, 2025) (applying doctrine in context of workers' compensation). The Court agrees with Amazon that the Complaint contains no allegation that Mr. Harris was an employee of Amazon or any of the other defendants, and this is conclusively fatal to the claim. O.C.G.A. § 34-9-8(a) ("A principal, intermediate, or subcontractor shall be **liable for compensation to any employee** injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer.") (emphasis added). Because Amazon has shown

---

[6] Like with the related doctrine of fraudulent joinder, the Court does not read the cited authorities to require proving actual fraud or even showing any wrongful intent. "As many courts have noted, the term 'fraudulent joinder' is a bit of a misnomer—the doctrine requires neither fraud nor joinder." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) (collecting cases).

there is no possibility that Mr. Harris could prevail under O.C.G.A. § 34-9-8, this action was removable and the Motion to Dismiss as to this claim must be granted.

**F. Federal Motor Carrier Safety Administration (FMSCA) Regulations**

Amazon moves to dismiss Count XVIII of the Complaint, which alleges "Violation of Georgia Law Incorporating FMCSA Standards Using the Continuous Flow Doctrine." Mr. Harris does not point to a private right of action under the FMSCA Regulations or the Motor Carrier Safety Improvement Act of 1999, 49 U.S.C. § 101 *et seq*., but "[i]t is well-settled that Georgia law allows the adoption of a statute or regulation as a standard of conduct so that its violation becomes negligence per se." *Pulte Home v. Simerly*, 746 S.E.2d 173, 179 (Ga. Ct. App. 2013) (citing *Rockefeller v. Kaiser Found. Health Plan of Ga.*, 554 S.E.2d 623 (Ga. Ct. App. 2001); *Hubbard v. Dep't of Transp.*, 568 S.E.2d 559 (Ga. Ct. App. 2002)). However, just pointing to an alleged violation of a regulation is not enough:

> [i]n determining whether the violation of a statute or ordinance is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.

*Cent. Anesthesia Assocs. P.C. v. Worthy*, 325 S.E.2d 819, 823 (Ga. Ct. App. 1984), *aff'd,* 333 S.E.2d 829 (Ga. 1985) (citing *Potts v. Fidelity Fruit, & Produce Co.*, 301 S.E.2d 903 (Ga. Ct. App. 1983)).

Amazon argues that the FMCSA regulations did not apply to the accident because Defendant Thomas was not driving a commercial motor vehicle, as defined by the FMCSA regulations.[7] If Amazon is correct, that would negate an argument that "the harm complained of was the harm [the regulations were] intended to guard against." *Worthy*, 325 S.E.2d at 823.

The vast majority of the rule violations cited by Plaintiff are from 49 CFR Part 383,[8] including "[f]ailing to perform a proper visual search prior to making a

---

[7] Under the Rules of the Georgia Public Service Commission, "[t]he Motor Carrier Safety Regulations issued by the United States Department of Transportation, Federal Motor Carrier Safety Administration (hereinafter "FMCSA"), contained in Title 49 of the Code of Federal Regulations, Parts 350, 382, 383, and 390 through 397 . . . are by this Rule made Transportation Rules of this Commission for all carriers regulated by this Commission" except that "[a]ll references to 'interstate' commerce in the Federal Motor Carrier Safety Regulations adopted hereby shall be interpreted for the purposes of this Chapter 515-16-4 to mean 'intrastate' commerce in Georgia." Ga. Comp. R. & Regs. 515-16-4-.01. Accordingly, to the extent that the FMSCA rules do not apply to Defendants, the Georgia rules also do not apply to Defendants.

[8] The one exception was "[c]ompliance with vehicle maintenance protocols under 49 CFR § 396.3(a)" (Doc. 7 ¶ 129(c)), but 49 CFR Part 396 also only apples to certain entities "directly concerned with the inspection or maintenance of commercial motor vehicles." 49 CFR § 396.1(a). Part 396 does not have its own definition section, but the general definition of "commercial motor vehicle" in Subchapter B, which contains Part 396, still has a minimum weight threshold that applies to non-passenger vehicles. 49 CFR § 390.5 (defining "[c]ommercial motor vehicle" as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle" weighs 10,001 lbs. or more, is used to transport more than 8 passengers for compensation or 15 passengers not for compensation, or is used for hazardous materials). This definition closely mirrors the definition of "commercial motor vehicle" under the ICC Termination

left-hand turn in violation of 49 CFR § 383.11(7)c," "[f]ailing to exercise proper space management around his vehicle in violation of 49 CFR § 383.11(10)c," "Failing to demonstrate safe on-road driving skills by failing to choose a safe gap for making a left-hand turn as required pursuant to 49 CFR § 383.113(d)iv," (Doc. 7 ¶ 30). The rules in 49 CFR Part 383 "apply to every person who operates a commercial motor vehicle (CMV) in interstate, foreign, or intrastate commerce, to all employers of such persons, and to all States." 49 CFR § 383.3(a). In turn, Commercial motor vehicle (CMV) is defined in 49 CFR § 383.5 to mean

> a motor vehicle or combination of motor vehicles used in commerce to transport passengers or property if the motor vehicle is a—
>
> > (1) Combination Vehicle (Group A)—having a gross combination weight rating or gross combination weight of 11,794 kilograms or more (26,001 pounds or more), whichever is greater, inclusive of a towed unit(s) with a gross vehicle weight rating or gross vehicle weight of more than 4,536 kilograms (10,000 pounds), whichever is greater; or
> >
> > (2) Heavy Straight Vehicle (Group B)—having a gross vehicle weight rating or gross vehicle weight of 11,794 or more kilograms (26,001 pounds or more), whichever is greater; or
> >
> > (3) Small Vehicle (Group C) that does not meet Group A or B requirements but that either—

---

Act of 1995 as amended by the Motor Carrier Safety Improvement Act of 1999. *See* 49 U.S.C. § 31132(1).

> (i) Is designed to transport 16 or more passengers, including the driver; or
>
> (ii) Is of any size and is used in the transportation of hazardous materials as defined in this section.

49 CFR § 383.5. As Defendants point out, Mr. Harris does not allege that Defendants were operating a commercial motor vehicle or reference this definition at all. Mr. Harris only alleges that Defendant was driving a 2020 Ford Transit cargo van but does not allege its weight. (Doc. 7 ¶ 7).[9] Consequently, Defendants are correct that the Complaint does not plausibly allege that the FMCSA regulations applied to the accident and any purported failure to comply with them cannot form the basis of an independent legal claim or support a negligence per se claim.[10] The Court will therefore dismiss Count XVIII.

[9] According to one publication, the curb weight of a 2020 Ford Transit 250 AWD is 5,200–5,800 lbs. Aaron Gold, *2020 Ford Transit 250 AWD Driven: The Van That Spawns a Hundred Chores*, MotorTrend (Oct. 01, 2020), http://www.motortrend.com/news/2020-ford-transit-250-awd-first-drive-review [https://perma.cc/7M37-BLFQ]. But whether this is true or not, Mr. Harris did not allege otherwise, and that is what matters for the Motion to Dismiss.

[10] The Court is aware of contrary out of state authority. *Werner v. Horton*, No. 3:24-CV-255, 2025 WL 2249355, at *5–6 (M.D. Pa. Aug. 6, 2025) (holding a complaint sufficiently pleaded applicability of FMSCA regulations even where Amazon argued that the complaint did not "plead any facts indicating that a Ford Transit van is a 'commercial motor vehicle' [or] . . . the weight of the van or provide any details beyond its make and model."). The court in that case held that it could not "rule on the applicability of the FMCSR and the weight of the van without further discovery." *Id.* at *6. The Court recognizes that details that bear on the FMSCA's applicability may require discovery, but that does not prevent a plaintiff from

**G. Intentional Infliction of Emotional Distress**

Count XIX of the Complaint is for Intentional Infliction of Emotional Distress ("IIED"). Under Georgia law, a claim of IIED contains the following elements: "(1) [t]he conduct must be intentional or reckless; 2) [t]he conduct must be extreme or outrageous; (3) [t]here must be a causal connection between the wrongful conduct and the emotional distress; and (4) [t]he emotional distress must be severe." *Smith-Tyler v. Bank of Am., N.A.*, 992 F. Supp. 2d 1277, 1282 (N.D. Ga. 2014) (citing *United Parcel Serv. v. Moore*, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999)). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." *Blue View Corp. v. Bell*, 679 S.E.2d 739, 741 (Ga. Ct. App. 2009).

An IIED plaintiff has a heavy burden. "The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id* (citing *Frank v. Fleet Fin., Inc.*, 518 S.E.2d 717 (Ga. Ct. App. 1999)). Moreover, the showing required for severe emotional distress is also quite high:

> Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin,

---

alleging on information and belief that the van in question was a commercial motor vehicle. Mr. Harris did not do so here, and conclusory allegations that a regulation was violated is not the same thing as alleging facts that plausibly show the regulation applied.

> disappointment, worry, and nausea. It is only where it is *extreme* that liability arises. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it.

*Abdul-Malik v. AirTran Airways, Inc.*, 678 S.E.2d 555, 560 (Ga. Ct. App. 2009) (citation omitted).

Given the weighty nature of an IIED plaintiff's burden, courts in this district applying the federal pleading standard have required more than "formulaic recitations of the elements of an intentional infliction of emotional distress cause of action." *Henderson v. JPMorgan Chase Bank, N.A.*, No. 1:09-CV-3384-MHS-ECS, 2010 WL 11507311, at *9 (N.D. Ga. May 27, 2010), *report and recommendation*, No. 1:09-CV-3384-MHS, 2010 WL 11527212 (N.D. Ga. June 25, 2010), *aff'd*, 436 F. App'x 935 (11th Cir. 2011) (citing *Twombly*, 550 U.S. at 555). But that is exactly what Mr. Harris did here, alleging that "Defendants' and their employee(s) or agent(s) conduct directly caused plaintiff severe emotional distress" and that "Plaintiff continues to endure extreme emotional distress due to the corrupt actions of the defendants' and their employee(s) or agent(s), as his now represents himself as a Pro Se litigant." *Id.* These conclusory allegations of emotional distress do not plausibly allege "distress . . . so severe that no reasonable [person] could be expected to endure it." *Abdul-Malik*, 678 S.E.2d at 560. The Motion to Dismiss Count XIX will therefore be granted.

### H. Punitive Damages

Because the Court is not dismissing the civil conspiracy claim, the Court will not dismiss the punitive damages claim. *Rutland v. Dean*, 5 S.E.2d 601, 602 (Ga. Ct. App. 1939) ("Recovery of punitive damages may be authorized where the circumstances of the tort are such as to evince an entire want of care and indifference to consequences. Wilful and intentional misconduct is not essential.") (quoting *Battle v. Kilcrease*, 189 S.E. 573, 574 (Ga. Ct. App. 1936)).

### I. Leave to Amend

"Generally speaking, a pro se plaintiff must be given at least one chance to amend the complaint before dismissal." *Watkins v. Sullivan*, No. 21-12396, 2022 WL 10792955, at *2 (11th Cir. Oct. 19, 2022) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc)). The rule apparently applies to even orders "granting in part" a "motion to dismiss." *Id.* If Mr. Harris seeks leave to amend the claims dismissed by this Order, he may do so by filing a motion for leave to amend no later than 14 days following the date of entry of this Order attaching his proposed Fifth Amended Complaint.

## Conclusion

For the above reasons, it is

**ORDERED** that Amazon Logistics, Inc.'s Partial Motion to Dismiss (Doc. 12) is **GRANTED IN PART**. Any Motion for Leave to Amend the claims dismissed by this Order must be filed within 14 days of the date of entry of this Order, and must be accompanied by a proposed Fifth Amended Complaint. It is

**FURTHER ORDERED** that Plaintiff Harold Harris's Motion to Remand to State Court (Doc. 13) and Corrected Motion to Remand to State Court (Doc. 16) are **DENIED**.

**SO ORDERED**, this 17th day of September, 2025.

Victoria Marie Calvert
United States District Judge