**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| HAROLD HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>T'ZIAH THOMAS, BULLARD LOGISTICS, LLC, and AMAZON LOGISTICS, INC.,<br><br>Defendants. | Civil Action No.<br>1:25-cv-00095-VMC |

**ORDER**

This matter is before the Court on Plaintiff's Partial Motion for Default Judgment due to Spoliation of Evidence and Discovery Violations ("Motion"). (Doc. 39).

**Background**

On or about May 10, 2023, Plaintiff filed his Initial Complaint in the State Court of Fulton County. (the "Action," Doc. 1-1 at 1). Then on or about December 9, 2024, Plaintiff filed his Fourth Amended Complaint, which included additional federal claims, resulting in its removal to this Court. (*See* Docs. 1; 1-11 ¶¶ 84–99, 129–133). In this Complaint, Plaintiff alleged that while driving his car with a passenger on October 8, 2022, he approached Defendant T'Ziah Thomas's van stopped on the road without signal. (Doc. 1-11 ¶¶ 6–8). When he attempted to

drive around Mr. Thomas's van, Mr. Thomas turned left, without warning, and hit his vehicle on the passenger's rear side. (*Id.* ¶¶ 9–10). At the time of the incident, Mr. Thomas was acting in the course and scope of his employment with Defendant Bullard Logistics, LLC as a delivery driver for Defendant Amazon Logistics, Inc. (*Id.* ¶ 12).

On April 21, 2025, Plaintiff filed the present Motion alleging that the Defendants failed to preserve data, altered and fabricated data, failed to produce data and documents, and transmitted fraudulent data. (*See* Doc. 39 at 4–7). After a telephone conference with the Parties, (*See* Doc. 53), the Court gave the Parties 90 days to conduct discovery regarding Plaintiff's Motion. (*Id.* at 6, 10). Thereafter, the Parties engaged in limited discovery by deposing various witnesses and issuing subpoenas. Upon completion of this discovery period, Defendants responded to Plaintiff's Motion and the Court now considers the Parties' arguments below. (*See* Docs. 76; 79; 82).

**Legal Standard**

"Spoliation refers to 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Pinkney v. Winn-Dixie Stores, Inc.*, No. CV214–075, 2015 WL 858093, at *3 (S.D. Ga. Feb. 27, 2015) (quoting *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (unpublished). "A district court has

broad discretion to impose sanctions for spoliation, in order to prevent unfair prejudice to litigants and to ensure the integrity of the discovery process." *Id.* (citation and internal marks omitted). "The party seeking spoliation sanctions must prove that the missing evidence existed at one time; that the alleged spoliator had a duty to preserve the evidence; and that the evidence was crucial to the party's case." *Little v. McClure*, No. 5:12–CV–147, 2014 WL 3778963, at *1 (M.D. Ga. July 31, 2014) (citing *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F.Supp.2d 1299, 1305 (N.D. Ga. 2011) (explaining that the party seeking spoliation sanctions must prove that the evidence once existed, the alleged spoliator had a duty to preserve the evidence, and the evidence was crucial to proving their prima facia case)).

After making these threshold findings, the Court must then turn to Fed. R. Civ. P. 37(e) which instructs a court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Appropriate sanctions may also include "the denial of [] defendant[s'] motion for summary judgment . . . or the exclusion of evidence." *In re Delta/Air Tran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d at 1305 (citations omitted); *see also Graff*, 310 F. App'x at 301 (citation and internal marks omitted) ("Under Georgia law, spoliation of critical evidence may warrant the imposition of sanctions such as exclusion of certain evidence or outright dismissal of the case.").

**Discussion**

Plaintiff's Motion concerns alleged spoliation and discovery violations. The Court addresses both, separately, below.

**I. Spoliation**

Plaintiff alleges that there is missing full dash cam footage and comprehensive data related to location, speed, and movements of the delivery van. (*See* Doc. 39 at 5–6). Plaintiff argues that (1) the dash cam installed on Mr. Thomas's van captured a longer video depicting moments before and after the accident, and (2) the accompanying event data recorder (EDR) installed on the van, contained comprehensive data related to location, speed, and movements of the delivery van. (*Id.*). Plaintiff also argues that because Defendants allowed this evidence to be automatically deleted despite being on notice "that an insurance claim or litigation would follow," Defendants engaged in spoliation. (*See id.* at 12). Plaintiff additionally argues that in viewing the longer dash cam footage,

Defendants created a shorter and altered version of this video because they knew it was unfavorable to their position. (*Id.* at 7, 14). As a sanction for this alleged spoliation, Plaintiff asks the Court to either enter "default judgment against all Defendants on the issues of liability," issue an adverse jury instruction, or exclude the allegedly shortened dash cam footage from evidence. (*Id.* at 18–19).

In support of his contention that longer dash cam footage and comprehensive data existed, Plaintiff first cites to a video that appears to be from the dash cam company's website, which shows multi-angle footage of the moments right before and after an unrelated car accident. (*Id.* at 14; Ex. B-6).[1] Plaintiff appears to contend that this video footage is from a similar system that was installed in Mr. Thomas's van. (Doc. 39 at 14). He argues that this video supports a finding that the dash cam in Mr. Thomas's van also recorded "multi-angle video footage" that "would have provided objective evidence of the vehicle and driver positions, movements, and signals before and during the collision." (*Id.*). Plaintiff also cites to a forensic report created by the National Center for Audio & Video Forensics, that concluded that longer dash cam footage likely existed, and that the dash cam footage produced by Defendants was shortened and created days after the accident. (*Id.* at 7; Ex. E-2 at 2–3). Plaintiff finally cites to

[1] The Court uses the same numbering Plaintiff did when he manually filed his exhibits. (*See* Doc. 40).

a 30(b)(6) deposition of Bullard Logistics where Lakeyah Bullard testified that a special system, separate from the dash cam company, captured information about Mr. Thomas's driving patterns based on his deliveries. (Doc. 39 at 14–15; Ex. F-2 at 34–35).

First, the unrelated video that Plaintiff purportedly pulled from the dash cam company's website is an "unauthenticated [video]. . . unsupported by any deposed witness statement, affidavit, or authenticated record." *Arenas v. Ga. Dep't of Corr.*, No. CV416-320, 2019 WL 1573698, at *2 (S.D. Ga. Apr. 11, 2019). The only deposed witnesses who say the unrelated multi-angle video came from the dash cam company's website was Plaintiff himself and the forensic analyst who (1) is not an employee of the dash cam company, and (2) admitted that he never reviewed any dash cam footage on an Amazon-branded van before this case. (*See* Docs. 75-2 at 160; 76-12 at 9, 30). However, these testimonies are insufficient to support a finding that the video is what they say it is. *See McHale v. Crown Equip. Corp.*, No. 21-14005, 2022 WL 4350702 at *4 (11th Cir. Sept. 20, 2022) (finding that the trial court did not abuse its discretion in excluding YouTube video evidence, where there was "no evidence of when the video was originally recorded, what device made the recording, or any witness testimony to the accuracy of the [event] or whether the video had been altered" because "[a]ll we know is that the video

was pulled from YouTube"). Thus, this evidence does not support a finding that longer dash cam footage existed.

Second, the forensic report is also unhelpful because as Defendant Bullard Logistics correctly points out, the analyst's report is speculative because the analyst did not inspect the van, had no experience with the dash cam system at issue, based his opinion on the type of camera in the van from information received from Plaintiff, and did not know if the camera was constantly recording. (*See* Doc. 76-12 at 23–25, 30, 35). Thus, this evidence also does not support a finding that longer dash cam footage existed.

Finally, the deposition testimony of Ms. Bullard does not reveal that comprehensive data related to location, speed, and movements of the delivery van ever existed. Indeed, her testimony only confirmed that delivery van movement was tracked based on delivery scans only. (*See* Ex. F-2 at 34–35). In other words, her testimony does not support a finding that this data once existed.

The record before the Court tells a different story. For example, deponent Marrotney Green, Bullard Logistics' fleet manager, explained that he did not know if longer dash cam footage existed, but if it did, it was created and controlled by the dash cam company. (*See* Doc. 76-4 at 14–15, 19). Deponent Phillip Bongiorni similarly explained that he could not speak for the dash cam company, he did not know how the company set their recording thresholds and what events would

trigger longer or shorter clips, and he did not know if a longer video was seen or reviewed by Amazon. (Doc. 75-25 at 7–9, 14).[2] These witnesses gave the same explanations regarding data relating to driver movements, GPS, and other comprehensive information. (*See* Doc. 75-25 at 23–26, 30, 33) (Mr. Bongiorni explaining that the Flex App and Mentor Application tracking systems used by Bullard Logistics and Amazon showed driver delivery progress and delivery scans, while the dash cam company's portal contained "information about their drivers and how they're driving."); (*see also* Doc. 76-4 at 8–9) (Mr. Green explaining that Bullard Logistics tracked drivers based on the delivery address they were at).

It is apparent that the information Plaintiff needed to support his contention that longer dash cam footage and comprehensive data once existed but was subsequently spoliated, would have come from the dash cam company itself. Although Plaintiff issued a subpoena to the dash cam company, he never followed up on the subpoena or brought the company's objections to the Court's attention. (*See* Docs. 55; 76-1 at 77; 76-10). Thus, instead of verifiable and authenticated evidence regarding the existence of longer dash cam footage and comprehensive data, the Court is left with Plaintiff's speculation, as well as unauthenticated and speculative evidence, which are far from enough to impose sanctions. *See Wright*

---

[2] Mr. Bongiorni is not identified by the Parties, but his testimony was on behalf of Amazon. (*See* Doc. 75-25 at 2).

*v Wal-Mart Stores E., LP*, No. 1:18-CV-1006-CC, 2021 WL 86836, at *7 (N.D. Ga. Jan 11, 2021) ("only speculation and conjecture back Plaintiff's contentions that there were cameras and that the cameras would have captured footage of this area of the Store."). Indeed, "[i]n order to impose sanctions against [Defendants], the Court would have to substitute Plaintiff's speculation for actual proof that [longer dash cam footage and comprehensive data] was in fact lost or destroyed," and the Court declines to do so. 770 F. Supp. 2d at 1309; *see also Dombrowski v. Lumpkin Cnty.*, No. 2:11–CV–0276–RWS–JCF, 2013 WL 2099137, at *15 (N.D. Ga. Mar. 21, 2013) ("Plaintiff has offered nothing more than speculation about important documents existing and being destroyed as a result of Defendants' failure to place a litigation hold.").

Even if either evidence did exist, there is nothing before the Court indicating that Defendants intended to deprive Plaintiff of this evidence by intentionally erasing or destroying longer dash cam footage, or altering the footage that was actually produced by Defendants aside from Plaintiff's own speculation.[3] *See Palmer v. Ga. CVS Pharmacy, LLC*, No. 1:19-cv-03178-SDG, 2021 WL 1305394, at *5

---

[3] Deponent Marrotney Green explained that he did in fact re-record the original dash cam video alert because he could not figure out how to send the video from the dash cam system to his phone. (*See* Doc. 76-4 at 12–13). Additionally, the forensic analyst admitted that the distorted quality of the video currently in evidence was likely due to it being transferred multiple times. (*See* Doc. 76-12 at 29).

(N.D. Ga. Feb. 12, 2021). Indeed, Mr. Bigiorni explained that the dash cam company's retention policy required deletion after 120 days (*See* Doc. 75-25 at 21), and Ms. Bullard explained that Bullard Logistics did not "have a policy on retaining telemetric data." (Ex. F-2 at 45–46). Thus, at best, Defendants' failure to turn over an alleged longer video and comprehensive data *might* constitute negligence, which is insufficient to support sanctions under the law of this circuit. *See Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) ("mere negligence in losing or destroying the records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case.") (internal quotes, cites, and alteration omitted); *In re Delta*, 770 F. Supp. 2d at 1314 (finding that while "malice" is not necessary to a finding of bad faith, more than negligence is required). Absent a finding of bad faith, a request for spoliation sanctions is dead on arrival. *See, e.g., Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1184 (11th Cir. 2020) ("Spoliation sanctions—and in particular adverse inferences—cannot be imposed for negligently losing or destroying evidence."); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009); *Cox v. Target Corp.*, 351 F. App'x 381, 383–84 (11th Cir. 2009); *Slattery v. Precision Response Corp.*, 167 F. App'x 139, 141 (11th Cir. 2006).

Likewise, as Amazon correctly points out, Plaintiff has not been prejudiced by this alleged missing evidence because he can rely on the testimony of the

passenger who was in his car and witnessed the moments before and after the accident. (*See* Doc. 79 at 20).

Because Plaintiff cannot show that such evidence once existed but was subsequently spoliated, spoliation sanctions are not appropriate. *See Palmer v. CVS Pharmacy Inc.*, No. 21-11100, 2022 WL 3042905, at *2 (11th Cir. Aug. 2, 2022) ("On a spoliation of-evidence claim, the party seeking sanctions bears the burden of proof." (citing *Eli Lilly & Co. v. Air Express Int'l USA, Inc.*, 615 F.3d 1305, 1318 (11th Cir. 2010))).

## II. Discovery Violations

Finally, Plaintiff argues that Defendants engaged in discovery violations by obstructing his "legitimate discovery efforts." (Doc. 39 at 8). Plaintiff lists several actions and nonactions taken by Defendants prior to this case being removed to this Court. (*Id.*). In response to this behavior, Plaintiff requests an award of "reasonable expenses, including attorney's fees, incurred as a result of Defendants' spoliation and discovery violations." (*Id.* at 19).

The problem with Plaintiff's argument is that he has not cited to any authority supporting his contention that the can Court sanction alleged discovery violations that took place in front of another court. (*See generally* Doc. 39); *see also* LR 7.1(A)(1), NDGa. ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority.").

Therefore, the Court declines to issue sanctions regarding prior alleged discovery violations.[4] *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("A court *may* impose sanctions for litigation misconduct under its inherent power.") (emphasis added); *see also Duetz Corp. v. Engine Distribs., Inc.*, No. 1:21-CV-00288-SCJ, 2022 WL 18459642, at *4 (N.D. Ga. Mar. 4, 2022) ("District courts have substantial discretion in deciding whether and how to impose sanctions.").

**Conclusion**

For the foregoing reasons, Plaintiff's Motion (Doc. 39) is **DENIED**.

It is **ORDERED** that Amazon and Plaintiff's Motions to File Matters Under Seal (Docs. 81; 83; 92) and Plaintiff's Unopposed Motion to File Supplemental Exhibits (Doc. 84) are **GRANTED.**

It is **FURTHER ORDERED** that Amazon's Motion to File a Sur-Reply (Doc. 90) is **DENIED AS MOOT**.

**SO ORDERED** this 2nd day of December, 2025.



Victoria Marie Calvert
United States District Judge

[4] The Court also notes that Plaintiff is representing himself *pro se*; therefore, he would not be entitled to attorney's fees.